```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
MICHAEL J. WANG,

                    Plaintiff,

          -against-                    MEMORANDUM AND ORDER
                                       05-CV-1862(JS)(ARL)
EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES,

                    Defendant.
----------------------------------X
APPEARANCES:

For Plaintiff:     Michael J. Wang, pro se
                   4 Chester Street
                   South Setauket, New York 11720

For Defendant:     Julia Miller, Esq.
                   Michael J. Puma, Esq.
                   Heather Leigh Hopkins, Esq.
                   Morgan, Lewis & Bockius LLP
                   101 Park Avenue
                   New York, New York 10178
```

SEYBERT, District Judge:

On April 15, 2005, Michael J. Wang ("Wang" or "Plaintiff") filed a Complaint against the Educational Commission for Foreign Medical Graduates ("ECFMG" or "Defendant") alleging claims under 42 U.S.C. §§ 2000e, 1981, 1983, 1985, 1986, the New York Executive Law, and state law claims for intentional infliction of emotional distress and slander. On February 23, 2006, this Court granted Defendant's motion to dismiss. Plaintiff appealed, and on March 28, 2007, the Second Circuit affirmed this Court's Order in part and reversed in part. After further motion practice, this Court determined that Plaintiff's Section 1981 and state law claims survived Defendant's motion to dismiss. Pending before the

Court is Defendant's motion for summary judgment seeking dismissal of Plaintiff's remaining claims. For the reasons set forth below, Defendant's motion is GRANTED.

BACKGROUND

The following facts are taken from the Parties' 56.1 Statement, Counter-Statement and the exhibits thereto.

Plaintiff is of Asian descent born in the People's Republic of China. (Def's. R. 56.1 Statement ("Def's. Stmt.") ¶ 1.) Defendant is a not-for-profit organization which utilizes a certification program to assess whether foreign medical graduates are qualified to enter medical residency and/or fellowship programs in the United States. (Id. ¶ 2.) To be eligible for certification, Plaintiff had to pass two steps of the United States Medical Licensing Examination ("USMLE") and an English language examination. (Id. ¶ 3.)

Applicants applying for certification are informed of the ramifications of engaging in "irregular behavior," defined as

> all actions or attempted actions on the part of applicants or examinees that would or could subvert the examination, certification, or other processes of ECFMG. Examples include, but are not limited to, failing to comply with a USMLE or ECFMG policy, procedure and/or rule; falsification of information on applications, submissions of any falsified or altered document to ECFMG, or submission of any falsified or altered ECFMG document to other entities or individuals.

(Id. ¶ 7.) Applicants are further advised that engagement in

2

irregular behavior may result in sanctions, such as revocation of their ECFMG certificate. (Id. ¶ 8.)

Wang applied in 1994 to take the USMLE examination. (Id. ¶ 9.) On September 22 and 23, 1994, Wang took Step 1 and received a failing score of 60/126. (Id. ¶ 10.) On March 1 and 2, 1995, Wang took Step 2 and received failing score of 56/78. (Id. ¶ 11.) Wang again took Step 1 in June of 1995, and again received a failing score. (Id. ¶ 12.) In September of 1995, Wang took Step 1 for a third time, and again received a failing score. (Id. ¶ 13.) On March 5 and 6, 1996, Wang took and again failed Step 2. (Id. ¶ 14.) Wang took Step 1 for a fourth time in June of 1996, for a fifth time in October of 1996, and a sixth time in June of 1997. (Id. ¶¶ 15, 17, 19.) Wang failed Step 2 two more times, in August of 1996 and March of 1997. (Id. ¶¶ 16, 18.) Wang submitted an application to ECFMG with each attempt to pass Step 1 and Step 2. (Id. ¶ 22.)

Wang passed Step 1 on his seventh try in October of 1997, with a passing score of 79/190, and passed Step 2 on the fifth try in August of 1997, with a passing score of 78/183. (Id. ¶¶ 20, 21.) On June 8, 1998, Wang received an ECFMG certificate for having passed Steps 1 and 2 of the USMLE and the English language exam. (Id. ¶ 23.)

In 1999, Wang began his post-graduate training in general surgery at St. Vincent's Hospital and Medical Center in New York

3

City. (Id. ¶ 25.) From July 2000 to June 2001, Wang completed a second year of residency training at the State University of New York Health Center at Stony Brook ("SUNY). (Id. ¶ 26.) On December 4, 2001, SUNY discharged Plaintiff during his third year of residency. (Id. ¶ 27.)

In November of 2001, ECFMG learned from Joyce Klein (nee Manolakes), Director of SUNY's Medical/House Staff Services Department, that SUNY was investigating discrepancies between the credentials Wang submitted to SUNY in his application for a residency position and those in ECFMG's records. (Id. ¶ 30.) The discrepancies included differences in Wang's date of birth and date of medical school graduation. (Id.)

During its investigation into these discrepancies, Defendant received a letter from Wang asking Defendant to change its records to reflect Plaintiff's date of birth as November 15, 1967, previously noted as November 15, 1957, and change his year of graduation as 1992, previously noted as 1982. (Id. ¶¶ 34, 35.) In response to this letter, Defendant wrote to Plaintiff and asked him to explain why he had previously reported an inconsistent date of birth and year of graduation on his twelve prior ECFMG applications. (Id. ¶ 36.) On January 2, 2002, Wang wrote to Defendant and explained that his first application contained incorrect information, and thereafter, he copied the same incorrect information because he was worried that he would not be able to sit

4

for the examinations if he provided information that differed from his first application. (Id. ¶ 37.) On December 12, 2001, Defendant received a letter from Wang asking Defendant not to disclose Plaintiff's USMLE score or the number of times he attempted to pass the test to any institution or individual. (Id. ¶ 39.)

On November 4, 2002, Wang filed a Complaint in this Court against SUNY and other entities. Wang v. State of New York Health Sciences Center at Stony Brook, et al., No. 02-CV-5840 (JS)(ARL). Plaintiff's allegations against SUNY in that case were similar to the current allegations against ECFMG. On February 23, 2006, this Court granted summary judgment for SUNY and dismissed all of Plaintiff's claims against it. The United States Court of Appeals for the Second Circuit issued a mandate on May 15, 2007, affirming this Court's dismissal.

On September 15, 2003 Toni Logue, Assistant Attorney General for the State of New York, informed ECFMG that Wang had submitted USMLE scores to SUNY reflecting scores of 85/220 on the Step 1 and Step 2 exams. (Id. ¶ 41.) Because these scores were higher than those actually earned by Wang, Defendant conducted an investigation to determine whether Plaintiff altered his reports. (Id. ¶ 42.)

On November 20 and December 8, 2003, Defendant wrote to Wang and asked him to provide an explanation within fifteen days as

5

to why his official score reports differed from the score reports Plaintiff submitted to SUNY. (Id. ¶ 44.) Wang did not respond. (Id. ¶ 45.) On March 4, 2003, Defendant sent a letter to Wang informing him that the matter would be referred to the ECFMG Medical Education Credentials Committee (the "Credentials Committee") at its May 24, 2004 meeting. (Id. ¶ 46.) The letter informed Plaintiff that he must advise Defendant by March 29, 2004, if he wished to appear personally before the Credentials Committee. (Id.) Plaintiff did not respond to the letter, and did not appear at the hearing or otherwise submit any response. (Id. ¶¶ 46, 47.)

The Credentials Committee determined that Wang had engaged in irregular behavior in connection with his submission of altered Step 1 and Step 2 test scores to SUNY, and sanctioned Wang by revoking his ECFMG Certificate for an unspecified time to allow the USMLE Committee on Irregular Behavior to review the Credentials Committee's decision. (Id. ¶¶ 48, 49.) On June 10, 2004, Defendant notified Wang of the Credentials Committee's decision, and advised him that he had sixty days to appeal the decision. (Id.) Wang did not appeal within the allotted time. (Id. ¶ 50.)

On July 1, 2004, the New York State Department of Health filed charges with the Department of Health State Board for Professional Medical Conduct ("BPMC") alleging that Wang practiced medicine fraudulently by providing knowingly false information, with intent to deceive, on various employment applications. (Id.

¶ 51.) On August 18, 2004, the BPMC determined that Wang engaged in fraud and therefore should be prohibited from obtaining a license to practice medicine in the State of New York. (Id. ¶ 52.) On Appeal, the Administrative Review Board upheld the BPMC's decision. (Id. ¶ 53.)

On December 12, 2004, Wang responded to ECFMG's charge of irregular conduct; in response, Defendant wrote to Wang and enclosed copies of its earlier communications regarding the irregular behavior charges. (Id. ¶¶ 54, 55.) On February 18, 2005, Wang wrote to the President of ECFMG, threatening litigation and alleging that Defendant "illegally revoke[d]" Wang's certificate. (Id. ¶ 56; Def.'s Ex. GG.) On May 23, 2005, Defendant informed Wang that it decided to continue the revocation of Wang's ECFMG Certificate, with reinstatement of the Certificate to be considered only after Defendant received a request from a medical licensing authority, and only after full disclosure to such licensing authority of the events that led to the revocation. (Id. ¶ 57.)

## DISCUSSION

### I. Standard of Review

"Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp. (In re

Blackwood Assocs., L.P.), 153 F.3d 61, 67 (2d Cir. 1998) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee, 109 F.3d at 134.

"Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256). "Mere conclusory allegations or denials will not suffice." William v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). Similarly, "unsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d at 41 (citing Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995)).

The Court is mindful that it must read a pro se litigant's papers "liberally, and . . . interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). That said, a "plaintiff's pro se status does not relieve [her] of the usual requirements of summary judgment." Cosby v. City of White Plains, No. 04-CV-5829, 2007 U.S. Dist. LEXIS 23770, at * 8 (S.D.N.Y. Feb. 9, 2007).

II. Section 1981 and NYSDHRL Claims

Claims under § 1981 are analyzed under the same burden-shifting framework as claims brought pursuant to Title VII; additionally, "New York courts apply similar standards as those applied by Federal courts in assessing discrimination claims under the New York State Human Rights Law . . . ." Staff v. Pall Corp., 76 Fed. Appx. 366, 368 (2d Cir. 2003) (internal citations omitted); see also Pratt v. Hustedt Chevrolet, No. 05-CV-4148, 2009 U.S. Dist. LEXIS 26312, at *13 (E.D.N.Y. Mar. 27, 2009) ("Section 1981 claims based on employment discrimination, and employment discrimination claims under the New York State Human Rights Law are analyzed under the same standards used for Title VII claims.").

To establish a Section 1981 claim, Plaintiff must show that

> (1) [he] is a member of a racial minority group, (2) [Defendant] intended to discriminate against [him] on the basis of race, and (3) this discrimination concerned one of the activities enumerated in 42 U.S.C. § 1981, . . . which include the rights to make

9

> and enforce contracts, to sue, and the right to the full and equal benefit of all laws and proceedings for the security of persons and property.

Jenkins v. N.Y. City Transit Auth., 201 Fed. Appx. 44, 45 (2d Cir. 2006) (internal citations and quotation marks omitted). If a plaintiff establishes this prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment actions. McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

Here, although Plaintiff is clearly a member of a racial minority group, Plaintiff fails to show that there is any issue of fact with respect to whether Defendant intended to discriminate against him on the basis of his race and/or national origin. Rather, the record reveals that Defendant launched an investigation after learning of discrepancies in Plaintiff's records. Defendant provided Plaintiff with numerous opportunities to explain the discrepancies, and decided to revoke Plaintiff's license only after a fair and thorough investigation. There is absolutely no evidence in the record to support Plaintiff's baseless allegation that Defendant revoked Plaintiff's license because of Plaintiff's race or national origin. In fact, nothing in the record other than Plaintiff's allegations in the Complaint support Plaintiff's claims of discrimination. Without more, mere allegations are not enough for an inference of discrimination. See Goenaga v. March of Dimes,

51 F.3d 14, 18 (2d Cir. 1995) (stating that a "plaintiff cannot meet his burden through reliance on unsupported assertions.").

Even if Plaintiff were to establish a prima facie case of discrimination, the record is clear that Defendant had a legitimate, non-discriminatory reason for revoking Plaintiff's license. Defendant revoked Plaintiff's license in accordance with its policies and procedures and only after a full investigation during which Plaintiff was provided with numerous opportunities to explain the discrepancies in his records and in his employment applications. There is absolutely nothing in the record to indicate that Plaintiff's license was terminated because of his race and/or national origin; rather, it is clear that Defendant revoked Plaintiff's license because Plaintiff engaged in "irregular behavior."

Plaintiff's retaliation claim also fails. There is absolutely no evidence to suggest that Defendant made its decision to revoke Plaintiff's license in retaliation for Plaintiff's complaints of discrimination. At the outset, Wang wrote his December 23, 2004, letter threatening litigation and claiming that Defendant "illegally" revoked his license after Defendant made the decision to revoke Wang's license. Absent Plaintiff's conjecture and unsupported allegations, there is nothing to create an issue of fact as to whether Defendant revoked Plaintiff's license in retaliation for Plaintiff's complaints. Moreover, Defendant has

provided sufficient undisputed evidence of its legitimate and non-retaliatory reason for revoking Plaintiff's certificate, and Plaintiff has provided absolutely no evidence to indicate that Defendant's reasons were pretextual.

Accordingly, the Court GRANTS summary judgment for Defendant on Plaintiff's Section 1981 and Human Rights Law claims.

III. <u>Defamation Claims</u>

To survive summary judgment on his defamation claim, Wang must provide evidence that supports the following: (1) a false and defamatory statement, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence in the unprivileged publication, and (4) the statement must be defamatory <u>per</u> <u>se</u> or have caused special harm. <u>See</u> <u>Hawkins v. City of N.Y.</u>, 2005 U.S. Dist. LEXIS 15898, at *49-*50 (S.D.N.Y. Aug. 8, 2005) (citing RESTATEMENT (SECOND) OF TORTS § 558).

Wang alleges that Defendant made false allegations regarding Wang's USMLE score. It is unclear exactly what statements Plaintiff claims were defamatory, and to whom such statements were made. Moreover, to the extent that Plaintiff claims that Defendant made false statements regarding Plaintiff's scores, the evidence submitted to the Court reveals that Plaintiff's actual USMLE scores were, in fact, lower than the scores submitted to SUNY. Finally, the various committees and administrative agencies advised of the discrepancies in Plaintiff's

records shared a common interest in enforcing ECFMG's rules and regulations and ensuring that a physician licensed in New York State did not engage in "irregular behavior." Thus, Plaintiff has failed to establish a claim for defamation, and the Court GRANTS summary judgment for Defendant on Plaintiff's defamation claims.

IV. <u>Intentional Infliction of Emotional Distress</u>

"To prevail on a claim for intentional infliction of emotional distress, the plaintiff must prove: (1) that the actor intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of its conduct, (2) that the conduct was extreme and outrageous, (3) that the defendant's conduct was the cause of the plaintiff's distress, and (4) that the emotional distress sustained by the plaintiff was severe." <u>Duse v. Int'l Bus. Mach. Corp.</u>, 252 F.3d 151, 156 (2d Cir. 2001). In order to establish the first element of the <u>prima facie</u> case, "the alleged conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" <u>Valle</u>, 2001 U.S. Dist. LEXIS, at *10 (quoting <u>Murphy v. Am. Home Prod. Corp.</u>, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86 (1983)).

There is no evidence whatsoever to create an issue of fact as to whether Defendant intentionally inflicted emotion distress on Plaintiff. Again, Defendant revoked Plaintiff's

13

license only after a fair investigation in which Plaintiff had numerous opportunities to be heard. Defendant's decision to investigate Plaintiff or revoke his license did not amount to intentional infliction of emotional distress. Thus, the Court GRANTS summary judgment for Defendant on this claim.

CONCLUSION

For all of the reasons set forth herein, this Court GRANTS Defendant's summary judgment motion in its entirety.

The Court certifies that an appeal of this Order would not be taken in good faith and therefore denies in forma pauperis status for purposes of an appeal. The Court finds that an attempt to seek appellate review of the issues in this case would be frivolous. See Coppedge v. United States, 369 U.S. 438, 445, 82 S. Ct. 917, 920, 8 L. Ed. 2d 21, 28 (1962). ("We consider a defendant's good faith in this type of case demonstrated when he seeks appellate review of any issue not frivolous. In so doing, we note that if in forma pauperis litigation is attempted for reasons that may genuinely be characterized as the litigant's 'bad faith,' express authority exists in 28 U. S. C. § 1915 (d) for dismissal of the cause as frivolous.").

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: Central Islip, New York
September  17 , 2009